**"UNDER SEAL"**

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES of AMERICA | ) DOCKET NO. 3:16cr 221-MOC |
| | ) |
| v. | ) BILL OF INDICTMENT |
| | ) |
| (1) ROBERT LESLIE STENCIL, | ) Vio: 18 U.S.C. § 1349 |
| (2) DANIEL THOMAS BROYLES, SR., | ) 18 U.S.C. § 1341 |
| and | ) 18 U.S.C. § 1343 |
| (3) KRISTIAN F. SIERP | ) 18 U.S.C. § 2326(2)(A) & (B) |
| Defendants. | ) 18 U.S.C. § 1957(a) |
| | ) 18 U.S.C. § 1956(a)(2)(A) & (i)(1)(B) |
| | ) 18 U.S.C. § 982 |
| | ) 28 U.S.C. § 2461(c) |
| | ) 18 U.S.C. § 2 |

**THE GRAND JURY CHARGES**:

At all times relevant to this Indictment:

Introduction

1. Niyato Industries, Inc. ("Niyato") was a company incorporated in Nevada and registered as an operating entity in Charlotte, North Carolina. Niyato maintained a bank account at J.P. Morgan Chase with account number ending in #9352. Niyato's corporate address was a private mail box in a commercial mail receiving agency at 1235-E East Boulevard, Suite 130, Charlotte, North Carolina.

2. Defendant **ROBERT LESLIE STENCIL**, was a United States citizen residing in Charlotte, North Carolina. **STENCIL** founded Niyato in 2010 and was the registered President and self-designated Chief Executive Officer of Niyato.

3. Defendant **DANIEL THOMAS BROYLES, SR.**, was a United States citizen residing in Malibu, California.

1

4. Defendant **KRISTIAN F. SIERP**, was a United States citizen residing in Costa Rica. **SIERP** owned and operated a telemarketing call center in Costa Rica.

## COUNT ONE
## (CONSPIRACY TO COMMIT MAIL AND WIRE FRAUD - 18 U.S.C. SECTION 1349)

### The Conspiracy

5. From at least January 2012, the exact date being unknown to the Grand Jury, through in or about August 18, 2016, in Charlotte, Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants

**ROBERT LESLIE STENCIL,**
**DANIEL THOMAS BROYLES, SR.,**
and
**KRISTIAN F. SIERP,**

together with other conspirators, both known and unknown to the Grand Jury, knowingly combined, conspired, confederated, and agreed together, and with each other, to commit the following offenses:

    a. To knowingly and willfully devise a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme and artifice to defraud did knowingly and willfully place and caused to be placed in a post office and authorized depository for mail matter, and to be sent and delivered by the Postal Service and by a private and commercial interstate carrier, mail matter, specifically victim investments in Niyato Industries, Inc., in violation of Title 18, United States Code, Section 1341; and

2

b. To knowingly and willfully devise scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme to defraud did knowingly and willfully transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds, specifically wire transfers of victim investment funds into and from the bank account of Niyato Industries, Inc., in violation of Title 18, United States Code, Section 1343.

## Purpose of the Conspiracy

6. The purpose of the conspiracy was to: (a) make materially false and fraudulent representations to investors regarding the nature of Niyato's facilities, operations, management, expertise, achievements, and stock value to induce investors to purchase Niyato stock; and (b) enrich **STENCIL**, **BROYLES**, **SIERP**, and others, who used the proceeds of the stock sales for their personal benefit.

## Manner and Means of the Conspiracy and the Scheme to Defraud

7. It was part of the conspiracy and scheme to defraud, and among the manner and means by which the defendants and their co-conspirators carried out the conspiracy, that:

a. **STENCIL, BROYLES, SIERP**, and others contacted targeted victims—at least ten of whom were over the age of 55—by telephone and email to induce those victims to purchase Niyato stock.

b. **SIERP** and co-conspirators working in his telemarketing call center in Costa Rica used fake names and Voice over Internet Protocol (VoIP) in calling victims. The VoIP technology, which utilized computers to make telephone calls over the Internet, allowed **SIERP** and co-conspirators to use recognizable United States area codes to make it falsely

3

appear on victims' caller identification devices that their calls were made from somewhere in the United States when, in fact, the calls originated in Costa Rica.

c. To induce victims to purchase Niyato stock, **STENCIL**, **BROYLES**, **SIERP**, and others made numerous false and fraudulent representations, both in direct exchanges with victims and through published and publicly posted materials. These false and fraudulent representations included, among other things, that Niyato: had a headquarters in Charlotte, North Carolina, and at least one operational facility; had manufactured electric vehicles and sold 2,700 such vehicles; was an original equipment manufacturer of compressed natural gas (CNG) and liquid petroleum gas (LPG) vehicles and had been contracted to convert at least 150 such vehicles; possessed patented technology and proprietary hardware; held orders for hundreds of vehicles in production; was contracted to establish 5,000 CNG pumps across the United States; and employed as its Vice Chairman and Chief Operating Officer a former executive of Toyota Motor Corporation.

d. To further induce victims to invest in Niyato stock, **STENCIL**, **BROYLES**, **SIERP**, and others falsely told victims that Niyato's stock was marketable, on the verge of an initial public offering (IPO), and would have a value of at least $5.00 per share after the IPO. **STENCIL**, **BROYLES**, **SIERP**, and others then falsely represented that victims had only a brief opportunity to purchase Niyato stock for $0.50 per share in a pre-public offering—thus promising a high-yield return on victims' investments.

e. **STENCIL**, **BROYLES**, **SIERP**, and others also falsely represented to victims that Niyato would use invested funds to expand existing facilities, develop infrastructure, increase inventory, further operations, and prepare for an imminent stock IPO.

4

f. Once a victim agreed to purchase Niyato stock, **STENCIL**, **BROYLES**, **SIERP**, and others continued to contact the victim to persuade the victim to make additional purchases of Niyato stock to allegedly maximize the victim's investment gains. In truth and in fact, **STENCIL**, **BROYLES**, and **SIERP** knew that the proceeds of Niyato stock sales were not invested in Niyato, but paid out to them and others for their personal benefit.

g. To obtain victims' money, **STENCIL**, **BROYLES**, **SIERP**, and others instructed victims to mail payment for Niyato stock to **STENCIL** at the private mail box identified as Niyato's corporate address in Charlotte, North Carolina, or to wire payment directly into Niyato's J.P. Morgan Chase bank account, which **STENCIL** controlled.

h. **STENCIL** received and deposited into Niyato's bank account all victim payments mailed to the private mail box. **STENCIL** also monitored Niyato's bank account for victim payments made by wire transfers directly into that account.

i. Once a victim investor's funds were deposited into Niyato's bank account, **STENCIL** distributed from that account by wire transfer a sales commission payment of approximately 50 percent of the victim's funds to the bank account of the co-conspirator(s) who had contacted the victim and induced the victim to purchase Niyato stock. **STENCIL** specifically directed wire transfers from the Niyato bank account to bank accounts controlled by **BROYLES** in amounts equivalent to approximately 50 percent of the sums invested by victims whom **BROYLES** solicited. Similarly, after receiving investments from victims whom **SIERP** solicited, **STENCIL** wired approximately 40 percent of the invested funds to **SIERP**'s domestic SunTrust bank account with account number ending x9740 and approximately 10 percent of the invested funds to one of **BROYLES**'s bank accounts (as a result of the fact that **BROYLES** recruited **SIERP** into the scheme).

5

j. After **STENCIL** had transferred victim funds to **SIERP**'s domestic SunTrust bank account, **SIERP** would withdraw those funds in Costa Rica by means of cash ATM withdrawals.

k. Of the remaining victim funds that he did not pay as sales commission to **BROYLES**, **SIERP**, and other co-conspirators, **STENCIL** spent the funds for his own personal benefit, either directly or by transferring the funds to his personal bank accounts.

8. **STENCIL, BROYLES, SIERP**, and others used invested victim funds for their personal benefit, not to develop and operate Niyato as a viable business.

9. **STENCIL, BROYLES**, and **SIERP** never initiated an IPO for Niyato stock.

10. Through their actions, including their misuse of invested victim funds, **STENCIL, BROYLES, SIERP**, and others made Niyato and its stock worthless.

All in violation of Title 18, United States Code, Sections 1349 and 2326(2)(A) & (B).

6

## COUNTS TWO THROUGH SIX
## (MAIL FRAUD - 18 U.S.C. SECTION 1341)

11.  The Grand Jury realleges and incorporates by reference paragraphs 1 through 4 and 6 through 10 of this Indictment.

12.  From at least January 2012, the exact date being unknown to the Grand Jury, through in or about August 18, 2016, in Charlotte, Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants

**ROBERT LESLIE STENCIL,
DANIEL THOMAS BROYLES, SR.,
and
KRISTIAN F. SIERP,**

knowingly and willfully devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose of the Scheme and Artifice

13.  The Grand Jury realleges and incorporates by reference paragraph 6 of this Indictment as a description of the purpose of the scheme and artifice.

### The Scheme and Artifice

14.  The Grand Jury realleges and incorporates by reference paragraph 7 of this Indictment as a description of the scheme and artifice.

### Use of the Mails

15.  On or about the dates set forth below, each such date constituting a separate count of the Indictment, in the Western District of North Carolina and elsewhere, the defendants,

**ROBERT LESLIE STENCIL,
DANIEL THOMAS BROYLES, SR.,
and
KRISTIAN F. SIERP,**

7

together with others known and unknown to the Grand Jury, did knowingly and willfully place and caused to be placed in a post office and authorized depository for mail matter, and to be sent and delivered by the Postal Service and by a private and commercial interstate carrier, mail matter, specifically victim investments in Niyato Industries, Inc., for the purpose of executing the scheme to defraud, and attempting to do so:

| Count | Sender Initials | Mail Matter Sent From | Received | Approximate Date |
|---|---|---|---|---|
| 2 | PD | Alamo, CA | Charlotte, NC | 6/10/2016 |
| 3 | RB | La Center, KY | Charlotte, NC | 6/13/2016 |
| 4 | EG | Peoria, IL | Charlotte, NC | 6/13/2016 |
| 5 | LF | Lafayette, CA | Charlotte, NC | 6/15/2016 |
| 6 | VM | Muscatine, IA | Charlotte, NC | 6/16/2016 |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNTS SEVEN THROUGH FOURTEEN
## (WIRE FRAUD - 18 U.S.C. SECTION 1343)

16. The Grand Jury realleges and incorporates by reference paragraphs 1 through 4 and 6 through 10 of this Indictment.

17. From at least January 2012, the exact date being unknown to the Grand Jury, through in or about August 18, 2016, in Charlotte, Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendants

**ROBERT LESLIE STENCIL,
DANIEL THOMAS BROYLES, SR.,
and
KRISTIAN F. SIERP,**

knowingly and willfully devised a scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

### Purpose of the Scheme and Artifice

18. The Grand Jury realleges and incorporates by reference paragraph 6 of this Indictment as a description of the purpose of the scheme and artifice.

### The Scheme and Artifice

19. The Grand Jury realleges and incorporates by reference paragraph 7 of this Indictment as a description of the scheme and artifice.

### Use of the Wires

20. On or about the dates set forth below, each such date constituting a separate count of the Indictment, in the Western District of North Carolina and elsewhere, the defendants,

**ROBERT LESLIE STENCIL,
DANIEL THOMAS BROYLES, SR.,
and
KRISTIAN F. SIERP,**

9

together with others known and unknown to the Grand Jury, did knowingly and willfully transmit, and cause to be transmitted, the following wire transfers in interstate commerce from the Niyato bank account for the purpose of making commission payments for the inducement of victim investor funds, in furtherance of the scheme to defraud:

| Count | Sender | Recipient | Approximate Date | Approximate Amount |
|---|---|---|---|---|
| 7 | Stencil | Sierp | 4/19/2016 | $10,000 |
| 8 | Stencil | Broyles | 4/19/2016 | $2,500 |
| 9 | Stencil | Sierp | 4/26/2016 | $8,400 |
| 10 | Stencil | Broyles | 4/26/2016 | $2,100 |
| 11 | Stencil | Sierp | 5/2/2016 | $4,000 |
| 12 | Stencil | Broyles | 5/2/2016 | $1,000 |
| 13 | Stencil | Broyles | 6/21/2016 | $12,500 |
| 14 | Stencil | Broyles | 6/22/2016 | $12,500 |

All in violation of Title 18, United States Code, Sections 1343 and 2.

Case 3:16-cr-00221-MOC-DCK   Document 3   Filed 08/18/16   Page 10 of 14

## COUNTS FIFTEEN AND SIXTEEN
### (MONEY LAUNDERING – MONETARY TRANSACTION - 18 U.S.C. Section 1957(a))

21. The Grand Jury realleges and incorporates by reference paragraphs 1 through 4 and 6 through 10 of this Indictment.

22. On or about the dates set forth below, each such date constituting a separate count of the Indictment, in the Western District of North Carolina and elsewhere, the defendants,

**ROBERT LESLIE STENCIL,**
and
**DANIEL THOMAS BROYLES, SR.,**

together with others known and unknown to the Grand Jury, did knowingly engage and attempt to engage in the following monetary transactions by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is the transfer of funds from Niyato's bank account to **BROYLES**'s Bank of America account with account number ending #2110, such property having been derived from a specified unlawful activity, namely mail fraud in violation of Title 18, United States Code, Section 1341:

| Count | Sender | Recipient | Date | Amount |
|---|---|---|---|---|
| 15 | Stencil | Broyles | 3/01/2016 | $11,000 |
| 16 | Stencil | Broyles | 4/26/2016 | $12,500 |

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

11

Case 3:16-cr-00221-MOC-DCK   Document 3   Filed 08/18/16   Page 11 of 14

## COUNTS SEVENTEEN THROUGH TWENTY
## (MONEY LAUNDERING – INTERNATIONAL - 18 U.S.C. Section 1956(a)(2)(A))

23 ~~18~~. The Grand Jury realleges and incorporates by reference paragraphs 1 through 4 and 6 through 10 of this Indictment

24 ~~19~~. On or about the respective dates set forth below, each such date constituting a separate count of this Indictment, within the Western District of North Carolina and elsewhere, the defendant

### KRISTIAN F. SIERP,

together with others known and unknown to the Grand Jury, did knowingly transport, transmit, and transfer, and cause to be transported, transmitted, and transferred, monetary instruments and funds from and through a place in the United States to a place outside of the United States, that is the ATM withdrawal of funds in Costa Rica from his domestic SunTrust bank account, with the intent to promote the carrying on of specified unlawful activity, namely mail and wire fraud in violation of Title 18, United States Code, Sections 1341 and 1343:

| Count | Receiver | Transfer Sent From | ATM Transfer Received | Date | Amount |
|---|---|---|---|---|---|
| 17 | Sierp | Atlanta, GA | Costa Rica | 5/09/2016 | $503.76 |
| 18 | Sierp | Atlanta, GA | Costa Rica | 5/11/2016 | $503.75 |
| 19 | Sierp | Atlanta, GA | Costa Rica | 5/13/2016 | $503.68 |
| 20 | Sierp | Atlanta, GA | Costa Rica | 5/16/2016 | $504.75 |

All in violation of Title 18, United States Code, Sections 1956(a)(2)(A) & (i)(1)(B).

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this Indictment;

b. All property involved in such violations or traceable to property involved in such violations; and

c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendants to the extent of the value of the property described in (a) and (b).

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

- A forfeiture money judgment in the amount of at least $2,597,910 such amount constituting the proceeds of the violations set forth in this Indictment;

13

- Approximately $40,672.71 seized from SunTrust Account XXXXXXXXX9740 and Account XXXXXXXX8252, such accounts held by or for the benefit of Kristian F. Sierp;

- Approximately $305,096.58 seized during the course of the investigation from J.P. Morgan Chase Account XXXXXXXXXXX9352 and Account XXXXXX6166, such accounts held by or for the benefit of Niyato Industries, Inc. and/or Robert Leslie Stencil;

- Approximately $100,000 seized from a law firm to which Niyato Industries, Inc. had forwarded fraud proceeds.

A TRUE BILL

[signature redacted]

JILL WESTMORELAND ROSE,
UNITED STATES ATTORNEY

ANDREW WEISSMANN
CHIEF, FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

*[signature]*

GUSTAV W. EYLER
Trial Attorney
Gustav.Eyler@usdoj.gov
WILLIAM H. BOWNE
Trial Attorney
William.Bowne2@usdoj.gov
PATRICK DONLEY
Senior Litigation Counsel
Patrick.donley2@usdoj.gov
Fraud Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
(202) 305-4247